UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RANDALL KEENAN,

                    Plaintiff,

            -against-

MINE SAFETY APPLIANCES COMPANY
and HOME DEPOT USA, INC.,

                 Defendants.
-------------------------------------------------------X
PLATT, District Judge.

CV-03-0710 (TCP)(ARL)

**MEMORANDUM and
ORDER**

        Before the Court is a Motion by Defendants Mine Safety

Appliances Company ("MSA") and Home Depot USA, Inc. ("Home Depot," and

collectively "Defendants") seeking to exclude Plaintiff Randall Keenan's

("Keenan" or "Plaintiff") liability expert, Leo J. DeBobes ("Mr. DeBobes"),

pursuant to Rules 104(a) and 702 of the Federal Rules of Evidence.  For the

following reasons, Defendants' Motion is **DENIED**.

## PROCEDURAL HISTORY

        On February 12, 2003, Defendants removed this case from New

York Supreme Court to this Court.  Plaintiff later filed an Amended Complaint on

December 1, 2003.

        On December 27, 2004, Plaintiff submitted Mr. DeBobes' report

(the "DeBobes Report") as an exhibit to its cross motion for summary judgment.

On January 4, 2005, that motion was terminated by the Court due to improper

1

filing, and Plaintiff did not move to re-file. On May 10, 2005, Defendants moved to exclude Plaintiff's expert. About two months later, on July 5, 2005, this Court denied Defendants' motion to exclude pending a Daubert hearing, and granted Plaintiff leave to file an amended expert report, which Plaintiff did not do. On November 22, 2005, this Court held the Daubert hearing and Mr. DeBobes testified.

## BACKGROUND

On August 10, 2002, Plaintiff was working for Cablevision[1] at a residential property located in Calverton, New York. While hammering a "J-hook" into a wooden telephone pole, the J-hook ricocheted back and struck his left eye. At the time of the accident, Plaintiff was wearing safety glasses. Plaintiff alleges the J-hook went underneath these safety glasses.

Plaintiff claims that he was wearing "custom fit safety glasses with blue mirror lens." These glasses were allegedly manufactured by MSA and purchased by the Plaintiff at Home Depot. Plaintiff was not using glasses supplied by Cablevision because he had lost the pair given to him. (DeBobes Report at 2.) Plaintiff no longer has the glasses he wore during the incident.

As a result of the injury, Plaintiff alleges that he suffered a corneosclarael laceration of his left eye. He underwent surgery for this injury and lost sight in that eye. (Compl. ¶ 17.)

---

[1] Cablevision is not currently a party in this case.

2

On March 10, 2004, Plaintiff was interviewed by Mr. DeBobes. Mr. DeBobes took measurements of Plaintiff's face wearing an identical pair of safety glasses, and photographed him wearing them in various positions. (*Daubert* Hearing Transcript ("Tr.") at 11.) Mr. DeBobes found the glasses did not sit properly on Plaintiff's face and left numerous gaps. During the interview, Plaintiff provided Mr. DeBobes with the details of the accident. Mr. DeBobes then prepared a report.

Mr. DeBobes made several relevant conclusions. First, he found that the safety glasses were clearly defective for uses which could result in an impact from below. Second, Mr. DeBobes stated that reasonably available suitable eye protection existed at the time of Plaintiff's injury which would have minimized his exposure. Third, Mr. DeBobes found that the package erroneously claimed the glasses were "eye protection" that "meets OSHA [Occupational Safety and Health Administration] and ANSI [American National Standards Institute] requirements" because these groups had not set forth rules relating to this specific type of eye protection. Fourth, Mr. DeBobes found the warnings on the glasses were defective because they contained no written or pictorial instructions for their use. (DeBobes Report at 3-5.)

## DISCUSSION

Defendants argue that Plaintiff's expert should be excluded

pursuant to Fed. R. Evid. 104(a)[2] and 702[3] because (1) his qualifications fail to meet the standards of admissibility; and (2) his methodology lacks scientific or technical reliability.  Matters of exclusion or inclusion are left in the broad discretion of the District Court. *Zuchowitz v. United States*, 140 F.3d 381, 386 (2d Cir. 1998).

## A.        Qualifications

Courts must consider "the totality of a witness's background when evaluating the witness's qualifications to testify as an expert." *Smith v. Herman Miller, Inc.*, 2005 WL 2076570, *3 (E.D.N.Y. 2005).  The qualifications necessary to testify as an expert are minimal. *See Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989) (holding that for an expert to be struck he must have "neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proferred").  The Second Circuit has held that disputes about an expert's credentials go to the weight, not the admissibility, of his testimony.  *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1044 (2d Cir. 1995).

---

[2]4     Fed. R. Evid. 104(a) (2006) states in relevant part:

> Preliminary questions concerning the qualifications of a person to be a witness . . . shall be determined by the court . . . In making its determination it is not bound by the rules of evidence except those with respect to privileges.

[3]5     Fed. R. Evid. 702 (2006) states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Lastly, for the witness's testimony to be admissible it need only assist the trier of fact in some way. *See Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir. 1981). A brief look at Mr. DeBobes extensive resume indicates he has exceeded this rather low standard.

Mr. DeBobes is a Certified Safety Professional[4] ("CSP") and is currently the Assistant Administrator for Safety and Planned Operations at Stonybrook University Hospital. (Tr. at 8.) He received an M.A. in Occupational Safety and Health from New York University in 1985 and a B.S. in Business Administration from the New York Institute of Technology in 1982. He has worked in the Occupational Safety and Health Field for approximately twenty-eight (28) years. (DeBobes CV.) Mr. DeBobes has also done consulting work related to health and safety with William Marletta Safety Consulting for about twenty (20) years. (Defs.' Mem. at 5.) With respect to personal protective equipment, Mr. DeBobes has experience in assessing the need for protective equipment, has authored a chapter in a textbook regarding this topic, and has consulted with various companies on the issue of protective eye wear. (Tr. at 10.)

Defendants argue that Mr. DeBobes is unqualified and point out that he is not an engineer, his degrees' are in a non-engineering field. Defendants also note that Mr. DeBobes never worked for a company that manufactures safety glasses, or dealt extensively with safety glasses. (Defs.' Mem. at 3-5.) Defendants cite to *Zaremba v. General Motors Corp.*, 360 F.3d 355 (2d Cir.

---

[4] A CSP is an individual who is engages in the "recognition and identification of evaluation and control of hazardous conditions." (*Daubert* Hearing Transcript at 8.)

2004), where the Second Circuit criticized a District Court for finding an expert qualified to propose an alternative automobile design in a products liability case involving a car crash where the expert had a bachelor's degree in engineering and his only practical experience was designing parts for automobiles.

*Zaremba* is inapposite. Unlike *Zaremba,* where the task of proposing a new and safer design for the automobile would have required a professional engineering expert, here, Mr. DeBobes only needs to consider safety glasses that are currently on the market; thus, he need not propose a new design. In such context, a CSP like Mr. DeBobes, who is not an engineer, may be qualified as an expert. *Cf Alvarez v. Pneumoabex, Corp.*, 2005 WL 2033472, *5 (N.D.N.Y. Aug 22, 2005) (holding that one of the ways a plaintiff's expert in a design defect case can establish a prima facie case of strict liability is to have "plaintiff's expert [] identify manufacturers of similar equipment that have put the proposed design into use.")

## B.    Methodology

The Supreme Court in *Daubert v. Merrell Dow*, laid out four nonexclusive factors to guide a Court in determining whether an expert's methodology is valid. 509 U.S. 579 (1993): (1) whether the expert's technique or theory can be or has been tested; (2) whether it has been subjected to peer review; (3) the known or potential rate of error of the technique or theory when applied; and (4) the existence and maintenance of standards and controls, that is, whether

the technique or theory is generally accepted by the scientific community to which it belongs. *See id.* at 593-94. In making a determination as to methodology, trial judges will be accorded significant discretion. *Id.*

Mr. DeBobes uses a methodology known as hazard assessment. This method involves assessing the sources and types of hazards expected in performing the task; assessing the different types of motions involved in performing the task; and finally, analyzing the data and making an appropriate selection as to the correct types of personal protective equipment that would be suitable for the task. (Tr. at 12.)

Applying the four *Daubert* factors, the hazard assessment methodology satisfies the standard necessary for expert testimony because (1) the methodology has been tested by OSHA, ANSI, the American Society of Safety Engineers; (2) the methodology has been subject to peer review by various professional organizations including ANSI and the Industrial Safety Equipment Association; (3) the potential rate of error with regard to the methodology could not be quantified to a specific rate, but that if performed by a qualified safety professional, the rate of error would be minimal; and (4) the methodology is accepted by other CSPs. (Tr. at 15-17.)

Defendants argue that Mr. DeBobes' methodology is insufficient by relying again on *Zaremba*, where the Second Circuit upheld a District Court's decision to strike expert testimony based on poor methodology. Defendants point out that Mr. DeBobes failed to set forth alternative designs, warnings, or

instructions for the safety glasses. (Defs.' Mem. at 9.)  However, in *Zaremba*, the Second Circuit found that the expert had not tested his *hypothetical* alternative design, drawn models or subjected his design to peer review or evaluation. 360 F.3d at 367.  As noted above, the circumstances here differ because Mr. DeBobes points to suitable alternative designs that are readily available on the market, several of which are manufactured by MSA.  Thus, he need not make, test, or review a new design. *See Alvarez*, 2005 WL 2033472, *5.

Defendant also argues that Plaintiff was unqualified because at the deposition he was unsure about certain specifics of the accident. (Defs.' Mem. at 8-9.)  However, during the *Daubert* hearing, this Court found Mr. DeBobes quite knowledgeable about the accident and the safety glasses.  Accordingly, Defendants' argument is immaterial.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion is hereby **DENIED.**

**SO ORDERED**.

_/S/_____
Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
August 31, 2006